No. 130.—NEWTON M. FOSTER, plaintiff in error, *vs.* SAMUEL RUTHERFORD, defendant in error.

[1.] An issue was formed between the surety in a younger *fi. fa.* and the plaintiff in older ones, as to whether the older *fi. fas.* had not been paid off, and as to whether the plaintiff in those *fi. fas.* had not released property of the defendant in them from the *fi. fas.* The surety tendered in evidence a writing made by the plaintiff in the older *fi. fas.* to the effect that the plaintiff thereby released some land of the defendant's from the *fi. fas.* In this writing no consideration was expressed, nor was the writing under seal. The Court would not receive the writing in evidence: *Held*, that this was right.

[2.] If the effect of a person's testimony will be to create or to increase a fund in which he is entitled to participate, the person is not competent as a witness.

[3.] A levy on *real* property, is not *prima facie* evidence of satisfaction of the *fi. fa.*; and although unaccounted for, it does not extinguish the debt.

[4.] On an issue as to whether a *fi. fa.* has been paid off or not, sayings of the defendant against his interest, about matters which tend to show the *fi. fa.* not paid off, are admissible as evidence for the plaintiff in *fi. fa.*

Foster *vs.* Rutherford.

Rule against Sheriff, in Gilmer Superior Court. Tried before Judge BROWN, May Term, 1856.

Samuel Rutherford, as the assignee of divers *fi. fas.* against Beverly A. Freeman, ruled the Sheriff, William Cox, Sheriff of Gilmer County, alleging that he had about two thousand dollars—$1.200 raised from the sale of defendant's property, and nine hundred and fifty dollars received from defendant in his hands.

To this rule, Newton M. Foster filed an issue, alleging that he was security for Freeman on a *fi. fa.* in favor of John S. James, and that the *fi. fas.* controlled by Rutherford had been paid off, and that Rutherford had no lien on the fund in Court, because he had released certain property, to-wit: lot of land No. 171, in the 6th district, 2d section, and No. six, in the town of Elijay, of the value of $2.000, from the levy and lien of said *fi. fas.* controlled by him.

On the trial, Foster proved that in 1853 Rutherford received from Freeman a negro woman by the name of Jane, and two mules, known as the Blankinship mules, and a horse.

He tendered in evidence a release which, after stating all the *fi. fas.* controlled by Rutherford, read as follows:

"I do hereby release lot of land No. 171, in 6th dist. and 2d sec. and one town lot, No. 6, in Ellijay, from the above stated *fi. fas.* which I now control, this 17th October, 1854.
                          SAML. RUTHERFORD."

The Court, on motion, rejected it, and Counsel for Foster excepted.

Foster then proposed to prove by R. R. HUNT, the Attorney of record of James, the plaintiff in *fi. fa.* that at the time he gave him the note for collection on Freeman and Foster, he stated that Foster was security. The Court ruled out the testimony, and Counsel for Foster excepted.

Foster then offered to read the answer of Cox, the Sheriff,

to the rule in evidence. Counsel for Rutherford objected; the Court sustained the objection, and Counsel for Foster excepted.

Foster then offered to prove the consideration of the release from Rutherford to Freeman by Cox, the Sheriff. Counsel for Rutherford objected, on the ground that Cox was interested, there being a rule absolute against him in favor of Townsend, Crane & Co. on a *fi. fa.* against Freeman. The Court sustained the objection, and Counsel for Foster excepted.

Rutherford then introduced in evidence his several *fi. fas.* to which Counsel for Newton objected, because there were levies (on land) entered on said *fi. fas.* undisposed of; the Court over-ruled the objection, and Counsel for Foster excepted.

Rutherford then read in evidence the testimony of W. W. FREEMAN, taken by interrogatories, in which he stated, that his father, B. A. Freeman, told him that Rutherford had handed him some money, but what amount, he did not know; his father paid William Cox $350 in cash, which he said was Rutherford's money, and a horse at one hundred dollars, for which he told me that he should keep that amount of Rutherford's money, which was paid for two tracts of land, the title to which was made to Samuel Rutherford. And also, I know that my father purchased two iron grey mules from William Blankenship, for which he told me he was paying Rutherford's money, and that the mules were for Rutherford and were delivered to him.

As to this testimony, the Judge's certificate is as follows: "I certify that I permitted the sayings of Freeman, in reference to the mules and the money, made while each was respectively in his possession, go to the Jury as evidence, and that I ruled that they were not competent, whenever made, when he was not so in possession."

To the admission of this testimony, Counsel for Foster excepted.

And on these several exceptions the case comes up.

BROWN, for plaintiff.

WALKER; UNDERWOOD, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

In this case, the first question is, whether the decision excluding the "release" was right?

This instrument, relase as it is called, was not under seal, nor did it appear to be founded on any consideration. Such an instrument does not, in general, bind the party who makes it.

But if this had been good against that party, what harm could it have done to the contesting *fi. fa?* For aught that appears, the only effect of its having been so good, would have been to remove a *fi. fa.* of superior lien from competition with that *fi. fa.* for the right to have satisfaction out of the released property. This, if the effect, would have been of benefit to that *fi. fa.*

And let the effect on other *fi. fas.* have been what it might, was not the plaintiff in this *fi. fa.* in the exercise of a legal right, when he executed the instrument? There was no privity of any sort between him and any of the persons who might own or be interested in those *fi. fas.* None of them was a surety on *his fi. fa;* and therefore, none of them was entitled to the right of subrogation, which a surety acquires on paying the debt—that right which is the source from which springs the rule, that when the principal in a *fi. fa.* releases the property of the defendant, the act amounts to a discharge of the *fi. fa.* to the extent of the value of the property.

Suppose Rutherford had not released this property, could the surety on this other *fi. fa.* compel him to stand aloof from this fund, and make his money out of the property? Nobody will say so. But if the surety cannot do that, neither can he complain, if Rutherford chooses voluntarily to take his pay rather out of this fund than out of the property.

Foster *vs.* Rutherford.

Is it to be said, that if Rutherford had held on to the pro-. perty and let go the fund, the surety's *fi..fa.* would have had the first lien on the fund; whereas, as Rutherford held on to the fund and let go the property, the surety's *fi. fa.* had only some inferior lien on the property, being preceded, say by a mortgage on the property? Be it so; what better right has the surety to complain of Rutherford for electing to go against the fund, than the holder of the mortgage would have had to complain of him, if he had elected to go against the property? None. In the eye of the law, the equities of the surety and of the mortgagee would be equal.

[1.] We think that the Court was right in excluding the writing.

It is of no consequence whether the Court was right or wrong in ruling out Hunt's evidence. The plaintiff in error had already proved by Samuel Jones, the matter to which he wished to examine Hunt. And there was no motion for a new trial. It is to be presumed that this decision, if wrong, did the plaintiff in error no harm. There was no conflicting evidence on this point.

It is a general rule of evidence, that if the effect of a witness' testimony will be to create or to increase a fund in which he may be entitled to participate, he is incompetent. (*Phil. Ev. Cowen & Hill's Notes, note* 1081; *House vs. Justices,* decided at Macon, June Term, '56.)

[2.] It seems that if these *fi. fas.* of Rutherford's had been out of the way, the fund would have gone in satisfaction of a *fi. fa.* against the same defendant, on which Cox, the Sheriff, had made himself liable. Cox, therefore, was, according to the above-stated rule, an incompetent witness on the score of interest.

And if he was not competent as a witness, still less could his sayings be testimony.

[3.] "A levy upon real estate is not *prima facie* evidence of satisfaction; and although unaccounted for, does not extinguish the judgment." *Deloach & Wilcoxson vs. Myrrick,* (6 *Ga.* 410.)

When the levy is on personal property, the rule is different. *Newton vs. McLendon,* (6 *Ga.* 392.)

Therefore, the Court did not err in admitting Rutherford's. *fi. fas.*

[4.] According to the Judge's certificate, only such of the sayings of the defendant in *fi. fa.* as were made at a time when it was against his interest to make them, were admitted in evidence. And such sayings are admissible in evidence. (*Ivat vs. Finch,* 1 *Taunt.* 141; 1 *Phil. Ev.* 257; *Ross & Leitch vs. Horne,* decided at Macon in June, 1856; *Smith vs. Cox, do.*)

We affirm the decisions of the Court below.