No. 84.—B. S. WARE, plaintiff in error, *vs.* L. JACKSON, defendant in error.

[1.] A judgment is a lien on all the property of the defendant, from its date.

[2.] If there is a good subsisting, legal title in the defendant at the time of the judgment, the property is bound.

Claim, in Muscogee Superior Court. Tried before Judge WORRILL, December Term, 1855.

A *fi. fa.* in favor of B. S. Ware, against Willis P. Baker, was levied upon a lot of land, and Low Jackson interposed a claim thereto. The following were the facts: In January,

1845, Baker sold the land to A. Iverson as trustee, and gave him a bond to make titles on the payment of the purchase money. On 10th November, 1846, Ware recovered his judgment against Baker. On 7th March, 1848, Baker made a deed to Iverson, having received the purchase money. Iverson afterwards, in June, 1848, sold to Jackson. Upon these facts the Court charged the Jury, that the land was not subject to the lien of Ware's judgment, after 7th March, 1848. This is the only question made in this case.

H. HOLT, for plaintiff in error.

DOWNING, for defendant in error.

The Court not being unanimous, delivered their opinions *seriatim.*

*By the Court.*—MCDONALD, J. delivering the opinion.

The plaintiff offered in evidence an execution against the defendant, issued on a judgment obtained on the 10th day of March, 1846, which was levied on the tract of land, the subject of the claim, on the 22d day of June, 1848, which was read to the Jury. The plaintiff gave in evidence a deed also, made by William B. Kimbrough to the defendant in execution, dated the 27th day of December, 1843, for the said land, and also a deed dated 7th day of March, 1848, made by Willis P. Baker to Alfred Iverson, as trustee of Mrs. Mary Anne Holt. The plaintiff in execution proved, further, that the land had been levied on as the property of Baker; that Alfred Iverson had claimed it; that he withdrew the claim, and that the Court thereupon passed an order that the execution should proceed; that the land was worth twenty-five hundred dollars; that the defendant in execution went into possession of said tract of land, and remained in possession several years, and was succeeded in the possession by Dr. Likey Holt, the husband of Mrs. Mary Anne Holt.

The claimant then read in evidence, a bond given by defendant in execution to Alfred Iverson, trustee, for titles to said land, bearing date on the 1st day of January, 1845, the same deed by defendant to Iverson, read by plaintiff, and a deed made by Iverson to claimant for same land, dated 22d November, 1849. He then proved by Thadeus G. Holt, Jr. that under and for the said Iverson, as trustee, or for his father, Dr. Likey Holt, he went into possession of said lot of land early in the year 1845, and continued in such possession two years. He knew nothing of the payment of the purchase money to said Baker, or when it was paid, except that he, himself, handed him a part of it when he went into possession of said land, or while he was in possession of it.

The Court stated, in its charge to the Jury, many things that were conceded; and among them, that ".Baker, on the 7th day of March, 1848, made a deed to Iverson to the lot of land, and Iverson then paid the purchase money." The whole of the charge of the Court is excepted to, but it is unnecessary, for the purposes of this case, to refer to the whole of it. In one part of it the Court holds this language: "But now, Iverson's equity is executed, and Baker has no title to the land; therefore, you cannot condemn the land under the execution, and you must find the issue for the claimant."

In this State, a judgment is a lien on all the property of the defendant. (*Cobb's New Dig.* 494, 496, 497.) It is a legal lien, and binds the legal title, as it is the highest evidence of property. The burden of proof, on the trial of claim cases, is on the plaintiff, when the defendant is not in possession of the property. The bare possession of the property by the defendant, is evidence of his ownership; and the claimant is bound, when that is shown, without any proof of title in him by plaintiff, to make good his title.

If the defendant is not in possession of the property, the plaintiff must then prove title in him. (*Cobb's New Dig.* 533.) This he can do in no more effectual manner than by producing a deed conveying the legal title to him. In this case, the plaintiff went further, and proved possession of the

land by the defendant, and a conveyance by him of the land to the first trustee. This conveyance was after the judgment lien had attached to the land.

The claimant relied on the last named deed as his evidence, to prove that the title had passed out of the defendant in execution to his predecessor in the trust; and he gave in evidence a bond executed by the defendant in execution to Iverson, the first trustee, dated the first day of January, 1845, before the judgment, binding himself to make a title to the land on the payment of a note given by him to defendant, of six hundred dollars, of the same date of the bond, and payable 12 months after its date. It was conceded that the money was paid at the time that Baker conveyed to Iverson (on 7th March, 1848). This, with the conveyance from Iverson to claimant, constituted his title. The claimant had no title to the land, at the time the creditor's judgment lien attached to the land, and it was then subject to seizure and sale by the Sheriff. Did the subsequent payment of the money and the taking of a conveyance, defeat the lien of the judgment? What is a lien? It is an obligation, title or claim annexed to or attaching upon any property, without satisfying which, such property cannot be demanded by its owner. (*Tomlin's Law Dic. Title " Lien.*") If the lien attached upon the land, the owner, whether it were Baker or Iverson, could not have the property until the lien was satisfied. It was insisted in the argument, that Baker, having contracted away the land and delivered possession of it, and given a bond to make a title when the purchase money was paid, placed Iverson in the condition of a mortgagor, and Baker in that of mortgagee; and that the interest of a mortgagor in land, is not the subject of levy and sale; and therefore, the land could not be seized and sold as Baker's land.

This argument changes the position of the parties in order to apply a principle to the case, that does not apply to it as the facts exist. It supposes, in the face of facts to the contrary, that Baker, at the time of the sale, parted with the property and took a re-conveyance of it as security for the

payment of the purchase money; when, in truth, he chose to retain the property and the title, which was a much better security to him, treating it as a security, than a mortgage could be. In the case of a mortgage, the mortgagee would have the right of redemption until that right became barred by the Statute of Limitations; and the non-payment of the purchase money, *when due,* did not affect the right of redemption. It is very different under a special contract for a title, for in that case, the purchaser, on the breach of his contract to pay, lost his right to demand a title to the property, and could not enforce it in Equity, unless the vendor had waived his right to take advantage of the purchaser's breach of his contract. It is unnecessary to go into the consideration of what would be the effect of the transfer of Iverson's note by Baker. For my own part, viewing the case as I do, it is not material to the rights of the judgment creditor, whose legal lien attached upon the property, what difficulties Baker's conduct may have thrown in the way of Iverson, so long as the creditor had no connection with it. In this case, there was a good, subsisting legal title to the land in Baker, at the time of the judgment; the property was his; he had not parted with it, and did not intend to part with it, until he was paid; and so it must have been understood by the purchaser; the property was bound by the judgment, under the Statute; and the subsequent execution of the contract, and the conveyance of the land, no more affects the right of the judgment creditor than if the entire contract of sale, payment and conveyance had been made by the parties after judgment, without the purchaser's notice of the judgment. The Court, therefore, erred in the charge given to the Jury, as hereinbefore set forth.

Iverson, it seems, made default in the payment of the note. It was due on the first of January, 1846, and was not paid until more than two years afterward; and in the meantime, the judgment was obtained. He had no equity, by reason of the default, and he lost all right to a specific performance of

the contract, if Baker had insisted on it.     (*Bogart vs. Perry,* (1 *Johns. Ch. R.* 55.)

No arrangement between Iverson and Baker, after judgment, could defeat creditor's lien.

Judgment reversed.

LUMPKIN, J. concurring.

While I concur in a judgment of reversal, I must say that it is not without some doubt and misgiving. The simple view which I take of the case is this : After the contract of sale by Baker to Iverson, Baker held the legal title to the land as security for the balance of the purchase money. The judgment, at the instance of Ware against Baker, bound the legal estate of Baker in the land, which was not parted with at the time of the rendition of the judgment. The Sheriff's vendee would stand precisely in the situation of Baker ; and therefore, it was incumbent on Iverson, as it is of every purchaser from a judgment debtor, to search the office before payment of his money in 1848, and see whether, in the meantime, no lien against Baker had attached upon the land : because, in that event, Baker could not consummate the contract nor Iverson acquire an indefeasible title. Iverson bought in 1845, paid $500, gave his note for $600, and took a bond for titles. In 1846, Ware obtained judgment against Baker. Suppose Baker, after that, had sued Iverson for the $600—might not Iverson have prevented a recovery by pleading this outstanding incumbrance ? If so, it is clear that Iverson could not, by making voluntary payment of his note, defeat the judgment lien of Ware. Had the note been trans-

ferred by Baker for a valuable consideration, to a *bona fide* holder, the case would have been different.

I stated in *Wilkinson vs. Burr*, (10 *Ga. R.* 117,) that a purchaser under a judgment against either vendor or vendee, like a purchaser from either by voluntary conveyance, succeeded only to the interest which the debtor had to incumber or part with, and no more nor no less. The purchaser in the one case, whether at private or public sale, being entitled to call for the balance of the purchase money, as the representative of the vendor, and the other being entitled to call for a conveyance, as the representative of the vendee, upon paying up what was due; that it was not land, but the debtor's interest in it, whether he be vender or vendee, that is sold, leaving the residue untouched. I see no reason to change that opinion—that the purchaser's interest as well as the seller's, will be bound by a judgment. See *Dart's Vendors and Purchasers of Real Estate*, 115 *and* 119.

It is argued that this case is precisely the same as though Baker, in 1845, had executed a deed to Iverson and taken a mortgage from his grantee to secure the payment of the purchase money. And it is analogised to the case of *Jackson ex dem. Norton & Burt, against Willard*, (4 *Johns. R.* 41,) where it was held, that lands mortgaged cannot be sold on an execution against the mortgagee, before a foreclosure of the equity of redemption, though the debt be due, and the estate of the mortgagee has become absolute at law.

I leave this and all the other intricate questions involved in this record, to be discussed at length by my ally and our dissenting brother, both of whom, I am sure, are fully prepared for the work. One conclusion is fairly deducible from this argument, and especially from the New York case just cited, namely: that the position taken by this Court, at an early day after its organization, that a mortgage is not an estate in fee, but a mere security for a debt, is abundantly sustained, both upon reason and *English*, as well as American authority.

BENNING, J dissenting.

Before the rendition of the judgment, in this case, Baker, the defendant in the judgment, had sold the land, given his bond to make title on payment of the purchase money, delivered up possession of the land and received the greater part of the purchase money. The contract of sale had not been at all rescinded, nor did there exist any reason to authorize either party to ask for a rescision. A part of the purchase money, it is true, remained unpaid; but it does not appear, even that that part had then fallen due.

Was this land subject to the judgment against Baker? That is the question.

What interest did Baker retain in the land? The legal title to it. Why? To serve as security for the payment of the purchase money, and for no other purpose. He retained no right to sell the land to another person; no right to recover possession of it himself; no right to encumber it in any way.

True, that if, although he retained no right to sell it, he had, without right, sold it; and sold it to a person not having notice of the previous sale, that person would have got a good title. But this would have been so, by virtue of certain principles of equity.

This, then, is the quantity of interest which Baker retained in the land—the legal title as a security for the purchase money.

And this is the interest which a trustee has in the trust property. Baker, the vendor, became, for the vendee, a a trustee of the land.

" One of the first principles of equity is, that it looks upon things agreed to be done, as actually performed ; and acting on this principle, when the contract is made, it considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser, as a trustee of the purchase money for the vendee."

" This equity attaches immediately on the making of the contract; and will not, therefore, be affected by the subsequent death, or bankruptcy, or any other act of either of the parties, before the contract is carried into execution." (*Hill on Trustees,* 171 ; *See* 1 *Sug. Ven. & Pur.* 273 ; 2 *Stor. Eq.* §§789, 790.)

" The legal inheritance vested in trustees, is not, *in Equity,* subject to the dower or free bench of their widows, or to the estate by courtesy of their husbands, although those rights will attach on the trustees' estate *at Law.* Nor will that or any other interest, held only in trust, be affected, in Equity, by the judgment or other debts or engagements, or by the bankruptcy or insolvency of the trustee." (*Hill on Trustees,* 269.)

Assets in the hands of an executor or administrator, are not, even at Law, subject to a judgment which is against him individually ; yet, he individually has the legal title to them. (1 *Wms. on Ex'rs,* 402.)

So mortgaged property, before a foreclosure of the mortgage, is not subject to a judgment against the mortgagee. Excellent reasons are assigned for this in *Jackson vs. Willard,* (4 *Johns. R.* 41.)

And all those reasons exist in a case like the present ; a case which, indeed, differs from that of a sale with a mortgage back of the property sold to secure the price, only in form. (*Cobb's Dig.* 517, 518, 519.)

In each of the two cases, the seller holds the legal title, and holds it for the same purpose—to secure the payment of the purchase money. In each, he may subject the property to the payment of a judgment for his debt, to the exclusion of all other judgments.

The Act of the Legislature declares, that " When any judgment has been or shall be rendered in any of the Courts of this State, upon any note or other evidence of debt, given for the purchase of land, where titles have not been made, but bond for titles given, it shall and may be lawful for the obligor in said bond, to make and file, and have recorded in the

Clerk's office of the Superior Court of the county, a good and sufficient deed of conveyance to the defendant, for said land; and thereupon, the same may be levied on and sold under said judgment, as in other cases: *Provided,* that the said judgment shall take lien upon the land prior to any other judgment or incumbrance against the defendant." (*Cobb's Dig.* 517, 518.)

This object might, no doubt, have been accomplished in Equity, before the passage of this Act.

A judgment of foreclosure of a mortgage, has a like effect in respect to the property mortgaged.

If, then, the title which a mortgagee has, is not subject to a judgment against him, neither can the title which a vendor retains as a security for the purchase money, be subject to a judgment against him.

And why should not this be so? The legal title, as a security for the debt, is but an incident of which the debt is the principal; and it is a maxim, that *accessorium non ducit, sed sequitur principale.* The security—the land—therefore, cannot be separated from the debt. And if sold, it would be separated from the debt. It could not carry the debt with it, not only because of the maxim aforesaid, but for another reason. To let it carry the debt with it, would be the same as subjecting the debt, itself, to levy and sale; and a debt is not the subject of levy and sale. *McGhee vs. Cherry,* (6 *Ga.* 550.) Indeed, the debt may have been negotiated.

Now when the debt has been negotiated by the vendor, all admit, I believe, that the legal title is not subject to a judgment afterwards obtained against him; but, in principle, what difference can it make whether the debt has been negotiated or not, if it be true that the judgment has no lien on the debt; for if it has none, then the vendor must have the *right* to negotiate it. If the judgment has no *lien* on the debt, it has nothing whatever on it or in it; and if this be so, the judgment cannot be the instrument of transferring the debt from one man's hands to another's.

The result of all that has been said is, I think, the conclu-

sion, that the interest which Baker, the vendor, retained in this land, was not, at least in Equity, subject to this judgment.

But if the claimant might accomplish the object of his claim by a bill in Equity, I do not see why he may not do the same thing by his claim at Law. The Act of 1820 declares, that "Whenever a plaintiff or complainant shall conceive that he, she or they can establish his, her or their claim, without resorting to the conscience of the defendant, it shall and may be lawful for every such plaintiff or complainant to institute his, her or their action, upon the Common Law side of the Court; and shall not be held to proceed with the forms of equity." (*Pr. Dig.* 447.)

I am not sure that I understand on what ground the judgment of the majority of the Court is put. I am not certain as to the *quantity* of interest in this land which they think subject to the judgment.

I suppose, however, that as to this, I may assume that one of two things is true—

1. Either that they deem the *whole* interest in the land subject;

2. Or, that they deem that only such a part of the interest as shall be equal, in value, to the amount of the unpaid part of the purchase money is subject.

Now if what I have already said is true, neither of these propositions can be true.

There is, however, another reason why I think they are not true—a reason founded on the rights of the *vendee*, in cases of this sort.

At the time when the contract of sale is made, in cases like the present, the contract is a good contract, and instantly confers rights on the parties to it : on the vendor a right to have the purchase money the moment it falls due; and if it is not then paid, a right to take steps to subject the land to its payment; on the vendee, a right to have a title made to him the moment he pays the purchase. Yes, it is the right of the vendee derived from the *contract*, that he shall have a

Ware *vs.* Jackson.

itle to the land, conveying to him the whole interest in the land, on his payment of the purchase money.

But if we let the *whole* interest in the land be sold to satisfy a debt against the vendor, we defeat *all* the right which the vendee derived from his contract.  We put it out of the pow-er of the vendor ever to make him a title to *any* interest in the land.

If we let a part of the interest in the land be sold—an interest, say equivalent in value to the unpaid part of the purchase money, we do the same thing only in a less degree.

It is therefore impossible, it seems to me, to let any quantity of interest in the land be sold to satisfy a debt of the vendor's, without violating the lawfully acquired rights of an innocent person, the vendee.

It will not do to say that what is allowed to be sold, is not an *interest in the land,* but a mere right to have payment of the purchase money.  A debt is not subject to be sold under *fi. fa.*  I have, however, already discussed this point.

In conclusion, I will simply say that I see nothing hard to creditors, in the result to which I have come.  They may, by a garnishment, get their hold on the debt for the purchase money, and by an injunction, secure that hold; and with this they should be content; for the right to the purchase money is all that the vendor, their debtor, is in justice and equity entitled to ; and they cannot be entitled to more than he is. And the best way by which they can get at this, I think, is the direct way—the way of garnishment.

For these reasons, I dissent from the judgment of the Court.