## GIBSON *vs.* HOUGH & SONS.

[This case was argued at the last term and decision reserved.]

1. Under the Code (§1955), a mortgage must clearly indicate the creation of a lien, and specify the debt to secure which it is given. A deed in fee simple, without condition or defeasance, and a bond for titles from the grantee to the grantor, in which bond the grantee obligates himself to convey the premises to the grantor on the payment of a sum of money, do not, separately or together, indicate the creation of a mere lien, but the purpose indicated is, to divest the grantor of title, and to vest title in the grantee until the payment of the debt. To take a bond for a future conveyance, and then deny that the maker thereof had any estate in the premises at the time he gave the bond, no fraud or mistake being alleged, is idle and inconsistent.

2. If a judgment creditor, whose judgment is junior to an absolute deed made to secure another creditor, can subject the land without redeeming, or offering to redeem, it is because the registry laws have not been complied with, or else because the debtor having retained possession, the conveyance is to be deemed fraudulent.

3. In this case it was error to instruct the jury that they had but one question to consider, and that was, whether the wife of the grantor consented to the conveyance or did not consent to it.

Claim. Levy and sale. Deed. Mortgage. Equity. Before Judge CRAWFORD. Talbot Superior Court. March Term, 1877.

The only exceptions taken by the claimant were to the charge as contained in the last division of the opinion, and the refusal to charge to the contrary. No motion for a new trial was made.

The facts are fully stated in the opinion.

J. M. MATHEWS, for plaintiff in error.

WILLIS & WILLIS, for defendants.

BLECKLEY, Judge.

1. An absolute, unconditional deed either conveys title or it does not. There is no middle possibility. This is true quite irrespective of the ultimate object which the instru-

ment is intended to serve, or the consideration on which it is founded. If it conveys title, the grantee is put in a situation to pass title back into the grantor; and if he obligates himself by bond to do so, he can comply with his undertaking. If it does not convey title, the nominal grantee's situation, *in respect to the title*, is just the same after taking the deed as it was before; he has no title, and therefore can convey none back to the grantor, and his bond to convey is idle and absurd. Why does he give such a bond, and why does the other party take it? To take a bond for a future conveyance, and then deny that the maker thereof had any estate in the premises at the time he gave the bond, no fraud or mistake being alleged, is to depart from consistency. When you have a man bound to you by a solemn writing to do a particular thing, can you turn on him and say that you have no need of the stipulated act, that you are as well off without it, and that he has no power to perform it, and never had? Can you do this when his power to perform must needs exist, in the nature of things, if some prior act of your own, some prior conveyance of yours to him, for which he paid you a valuable consideration, is held to be what it purports on its face to be, and what the bond or obligation which you have taken from him assumes it to be? Is an absolute deed a conveyance of title when you are getting money on it as a security, but something else when you are pressed for payment? It is a well known fact that an absolute deed is rarely, if ever, used as a security for money where a mere mortgage is intended. It is only used where the parties do not intend a simple mortgage, but contemplate the higher and better security of passing title. For the very reason that an ordinary mortgage does not pass title, they eschew it, and resort to an absolute, unconditional deed. The creditor prefers to take the legal title, and hold it until the debt is discharged; and the debtor, for the sake of getting credit, or for some other advantage, consents that title shall pass. In order that it may pass, and his real contract be complied with, he deliberately executes and delivers

an absolute deed. But in order that he may get the prem-
ises back when he pays the debt, he takes a bond for titles.
If both parties would abide by the real intention, and com-
ply with the actual contract, there would be no difficulty.
But sometimes the debtor will neither pay nor surrender
possession. Then it is that he invokes the supposed rule of
law, that every security for a debt is only a mortgage, and
that a mortgage never passes the legal title. But while it
is true in Georgia that a mortgage never passes the legal
title, it is not true that every security is only a mortgage. The
legal title may pass as security where the parties intended it
to do so, and where they use an appropriate instrument for
the purpose, such as an absolute deed in fee simple. The
instrument, though not a mortgage proper, will be treated
as a mortgage in equity, or even at law, when equitable
principles are invoked. But in neither court can equitable
principles be invoked for one party, without regarding the
correlative principles that operate in favor of the other party.
Equity says, do equity and have equity. It says, redeem—
pay the debt, do what you promised, comply with your con-
tract, and then, but not till then, will you be restored to the
ownership of the land. And this is right, and right eter-
nal. It will endure forever. It is imperishable and ever-
lasting. With reference to the element of redemption, the
rule is universal, that a mortgage, whether legal or equita-
ble, is always a mortgage. " As it was in the beginning, is
now, and ever shall be." Howard *vs*. Harris, 1 Vern., 190 ;
2 Leading Cases in Eq., part 2d, 414, (top page) and notes ;
Fonb. Eq., Book 3d, ch. 1, §4. On absolute deeds as secu-
rity, see 2 Johns., Ch., 189 ; 4 *Ib.*, 167 ; 6 *Ib.*, 417 ; 7 *Ib.*,
40 ; 15 Johns., 205. 555 ; 2 Cowen, 324 ; 9 Serg. & R., 434 ;
9 Wheaton, 489 ; 2 Hayw., 26 ; 5 Litt., 85 ; 1 Monroe, 73.
The rule that a mortgage passes no title has relation to a
mortgage proper—to an ordinary legal mortgage—and not
to a conveyance that is, in itself, different from such a mort-
gage, and which is brought down to the level of a mortgage
solely for the purpose of redemption, to give effect to sound

equitable principles. In section 1955, the Code declares that a mortgage must clearly indicate the creation of a lien, and specify the debt to secure which it is given. This describes a legal mortgage—a mortgage proper—and such an instrument cannot pass title. Code, §1954. But a deed in fee simple, without condition or defeasance, does not indicate the creation of a lien. Nor is a mere lien indicated by such a deed, read in connection with a bond for titles from the grantee to the grantor, obligating the former to convey the premises to the latter on the payment of a sum of money. The purpose clearly indicated is, to divest the grantor of title, and to vest title in the grantee until the payment of the sum specified. Construed thus, the deed and the bond are consistent, and each has its appropriate function to perform. Construed otherwise, they are inconsistent, and neither performs the functions which belong to it in ordinary transactions.

2. In the present case, Barksdale made a deed to Gibson, dated February 13, 1872, the consideration expressed being six hundred and ninety dollars. On the same day, Gibson made to Barksdale a bond for titles. On the 18th of September, 1873, a judgment was rendered against Barksdale in favor of Hough & Sons, for principal, one hundred and eighty dollars and sixteen cents. Execution founded upon this judgment was levied upon the premises on the 12th of June, 1874, Barksdale, the defendant, being then in possession. Gibson interposed a claim, and on the trial of that claim the question now under consideration arose. On the trial, it appeared by parol evidence that Barksdale borrowed of the claimant six hundred and ninety dollars, giving his note therefor, due on the 25th of December. It was to secure this note the deed was made, the claimant giving his bond to reconvey the premises to Barksdale when the note should be paid. Barksdale remained in possession of the premises, and was in possession at the time of the trial. He or his family had taken a homestead in other land belonging to him. He had neither paid nor tendered anything on his

note to the claimant. The claimant had sued upon it and obtained judgment for the debt. Barksdale's wife did not consent to his making the deed. The deed was not recorded until January 21, 1874—nearly two years after its execution. When or for what the debt was created which was the subject matter of the plaintiffs' judgment against Barksdale does not appear.

Treating the deed and bond as together constituting a mortgage, and as falling within the law of recording mortgages, they should have been put upon record within three months from their date. Code, §1955. A failure would leave them subject to postponement in favor of junior liens and conveyances (not affected with actual notice), coming into existence at any time prior to the actual recording. *Ib.*, §1957. The result in this case would be that the judgment lien would be superior to that of the mortgage, for the judgment was rendered before the deed was recorded, and the bond, so far as appears, has not been recorded even yet. But the deed and the bond do not together constitute a mortgage. It takes more facts than they exhibit—the balance of the facts resting in parol. From the face of the deed, it might well be inferred that the claimant actually purchased the land and paid for it. A deed in the usual form recites an actual sale and the actual payment of a consideration, and this deed may be presumed to have been in the usual form. From the face of the bond, supposing it to have been in the usual form also, the conclusion would be, that the obligor had agreed to sell his land, not Barksdale's, to the obligee, at a given price, to be paid in the future, and that upon payment of the same, the sale would be complete, and titles would then be made. From neither of the instruments, nor from both together, could the great fact be ascertained that the deed was made to secure the payment of the note described in the bond. This, of all others, is the very fact on which the element of mortgage rests, and it lies *dehors* the writings; it is in

parol, and would not be recorded were the writings, which are silent concerning it, recorded in the amplest time. It would seem, therefore, that the Code, in providing for recording mortgages, refers to mortgages proper, such as clearly indicate the creation of a lien. Treating the deed as an actual conveyance of title, it should have been recorded within one year from its date. The consequence of failure, however, would only be the loss of priority over a subsequent deed from the same vendor, recorded in time, and taken without notice of the former. Code, §2705. There may be some view of the registry laws (by which we mean the laws for recording deeds and mortgages) which will give them a more important bearing on this case than we now suppose them to have; so, notwithstanding what is said above, we leave the question open. It was not argued at the bar. A more formidable element of the case, as it seems to us, is that of the retention of possession by Barksdale. If credit was given to him by the plaintiffs in *fi. fa.* on the faith of this property, he being in possession, and the deed to the claimant not having been founded on any actual purchase and payment, the deed may be exposed to attack as a fraudulent conveyance. There is authority which looks in that direction. 1 Iredell's Law, 340. That the plaintiffs in *fi. fa.* have the right to redeem, and then levy and sell, there can be no doubt; but whether they can subject the land without redeeming depends, not as the court below held, upon whether Barksdale's wife consented to the deed, but upon the application of the registry laws, and the law of fraudulent conveyances.

3. The court instructed the jury that they had but one question to consider, and that was, whether Mrs. Barksdale consented to the conveyance or did not consent to it. This was error. Her consent or non-consent has no relevancy to any essential question in the case. 59 *Ga.,* 507.

Judgment reversed.