Parrott *vs.* Baker.

## PARROTT *vs.* BAKER.

1. According to *Powell vs. Watts*, 72 *Ga.* 770, in a statutory claim case the claimant is a competent witness in his own behalf to prove transactions between himself and the defendant in *fi. fa.*, though the latter be dead.

2. Declarations and tax-returns made by the vendee, when out of possession, and not in the presence of the vendor, are inadmissible at the instance of the vendee's creditor, as evidence to subject the land to the payment of his debt.

3. Land held by absolute deed as security for a debt still unpaid, is subject to levy and sale as the property of the vendee, under a judgment against him, no matter whether the judgment creditor gave credit on the faith of the property so held or not. The purchaser at sheriff's sale would acquire the right to receive the money due on the secured debt, as in the ordinary case of purchase money where bond for titles is outstanding. Redemption of the land would be accomplished by paying to him what would otherwise be payable to the original vendee. If the deed was made to defraud the vendor's creditors as well as to secure a debt, the land to the extent of its whole value would be subject to judgments against the

Parrott vs. Baker.

vendee, as against a statutory claim interposed by the vendor himself.

4. An absolute deed of conveyance containing a warranty of title, and purporting to be made on a valuable consideration, is valid and binding between the parties, though made for the purpose of defrauding creditors. The parties being *in pari delicto*, and the conveyance being an executed contract, the vendor cannot impeach it as a muniment of title in the vendee, whether possession of the land has been delivered under it or not, nor whether the vendee really paid the recited purchase money or not. The vendor is estopped. But an executory contract by the vendee, such as a bond for titles to reconvey to the vendor, may, when sought to be enforced, be impeached by the vendee, or even by his creditors, if shown to be directly connected with the fraudulent scheme in which the deed originated. For the purpose of resisting the enforcement of an executory part of the fraudulent scheme, the whole scheme is open to inquiry.

5. Delivery of a deed is sufficiently proved by being recorded, and by the maker of it being in possession of a written contract signed by the vendee stipulating for a reconveyance of the premises to the vendor.

July 31, 1889.

Claims. Witness. Evidence. Debtor and creditor. Deeds. Judgments. Fraud. Title. Contracts. Estoppel. Delivery. Before Judge FAIN. Bartow superior court. July term, 1888.

Reported in the decision.

R. B. TRIPPE and A. S. JOHNSON, for plaintiff.

BAKER & HEYWARD, for defendant.

BLECKLEY, Chief Justice.

It seems from the record that Baker made to Johnson three deeds, two dated the 10th and one the 11th of April, 1879. One of the former date embraced certain premises which may be briefly designated as the Irick farm. It was a regular conveyance in fee simple, the expressed consideration being $7,500 in hand paid, the

receipt whereof was acknowledged. It warranted the title to Johnson, his heirs, etc., against the claims of all persons whatsoever, and was recorded on the 7th of April, 1880. The other two deeds were of like character, but embraced other and different premises. Johnson died. Mrs. Parrot obtained a money judgment against his executrix, as such, in May, 1884; and in February 1886, the *fi. fa.* issued upon this judgment was levied upon the Irick farm as the property of Johnson's estate. Baker interposed a claim; the claim case was tried, and a verdict rendered for the claimant. A motion for a new trial was made and overruled.

1. Was Baker a competent witness in his own behalf as to anything that transpired between himself and Johnson, the latter being dead? According to *Powell vs. Watts*, 72 *Ga.* 770, he was. That case is a direct ruling upon the question; and while it is in apparent conflict with *Bothwell vs. Dobbs*, 59 *Ga.* 787, the two cases may possibly be reconcilable, because the latter was not only an effort to prove by the claimant a gift from the deceased debtor, but to prove a gift by parol, although the subject-matter was land. The judgment in this statutory claim case, should it be in favor of the claimant, will not affect Johnson's estate, his executrix, as defendant in *fi.fa.*, not being a party to the present litigation between the plaintiff in *fi. fa.* and the claimant. The land in controversy will still be the property of the estate as fully and amply after it is determined not to be subject to this *fi. fa.* as it was before. Should it be found subject, the estate will get the benefit in so far as its proceeds may pay off this execution. If it is not found subject, the estate will still have the land, and will suffer no prejudice by the result of the claim case. Possibly, therefore, the rule laid down in *Powell vs. Watts, supra,* may be correct;

at all events, as the judge below followed that case, we shall not now reverse his ruling. Were a suit brought against Baker by the executrix for the recovery of these premises, he would clearly be an incompetent witness in his own behalf. Code, §3854, exception 1.

2. There was no error in excluding the declarations of Johnson, made when Baker was not present, as to his (Johnson's) rights in this land; nor in excluding the tax books showing that he returned the same as his property for taxation. Johnson never entered into possession of the land, and his declarations and tax returns must therefore have been made when out of possession, and, consequently, when of no value to characterize possession or show an adverse holding.

3. The claimant introduced in evidence two writings bearing Johnson's signature, one of them dated April 11th, 1879, the other April 7th, 1880. Neither of them was under seal. The first was in these terms:

"Georgia, Bartow county. Upon payment to me, my heirs, executors or administrators, by Thomas H. Baker, his heirs, assigns, administrators or executors, the sum of $150, I hereby bind myself, my heirs, administrators, executors, in the sum of $10,000, firmly by these presents, to make and execute unto Thomas H. Baker, his heirs, assigns, administrators and executors, a good and sufficient title to all the property enumerated in two deeds made by said Baker to me, bearing date April 10th, 1879, and all that property enumerated in a deed made by said Baker to me, bearing date April 11th, 1879, said deeds having been made by said Baker to me to secure the payment of said Baker of such sum of $150."

The second was in these terms :

"Georgia, Bartow county. Whereas Thomas H. Baker has executed to me two deeds, one dated April 10th, 1879, and the other dated April 11th, 1879, to certain lands therein mentioned, now I hereby agree to reconvey to him said lands whenever called on by him. April 7th, 1880."

It will be seen that all three of the deeds were included in the first of these documents ; and supposing the object of the conveyances to be fully and truly stated in

this writing, the question arises whether the land levied on, if it was conveyed as security only, is subject to the plaintiff's execution to the extent of Johnson's interest therein, to wit, $150.   The court below was of opinion that this question turned on a second question, namely, whether the plaintiff in *fi. fa.* gave Johnson credit upon the faith of this property.   The motion for a new trial, in one of its grounds, complains that the court erred in charging the jury, in substance and effect, that she must have credited Johnson on the faith of the property levied upon, or it could not be subjected to her *fi. fa.*   We think this was error.   The legal title being in Johnson by an absolute deed to secure payment of a debt, Johnson had an interest in the land commensurate with the amount of that debt.   The rule is, that the lien of a judgment against the holder of the legal title binds the property to the extent of the beneficial interest which such holder has in the property.   Freeman, Judg. §§356, 357; *Ware vs. Jackson*, 19 *Ga.* 452; *Corbally vs. Hughes*, 59 *Ga.* 493.   Even if the case falls under the provisions of section 1969 of the code, we think such title as a debtor has in land is subject to levy and sale by virtue of any judgment rendered against him or his representatives, the code, §3580, declaring that judgments bind all the property of the defendant, both real and personal, from their date, except as otherwise provided in the code itself.   The general rule with respect to a bond for titles is, that until the money is paid in full, the property is subject to judgment liens, and to sale thereunder as the property of the vendor (the maker of the bond), and the purchaser acquires the right to receive the unpaid purchase money in lieu of the vendor.   So here, we think no matter when the debt of the plaintiff in *fi. fa.* was created, the lien of her judgment attached upon this land, unless the money which it was conveyed to secure

has been paid.   It could not have been the intention of
the legislature that a debtor might convey his land
to his creditor for an express consideration of $7,500 in
hand paid, and then set up as against his creditor's cred-
itors that he acquired no interest whatever in the land.
True, section 1971 declares : " The vendor's right to a
reconveyance of the property, upon his complying with
the contract, shall not be affected by any liens, encum-
brances or rights which would otherwise attach to the
property by virtue of the title being in the vendee; but.
the right of the vendor to a reconveyance shall be ab-
solute and permanent upon his complying with his con-
tract with the vendee according to the terms."   This is
not inconsistent with selling the land as the property of
the vendee, since the sale would only substitute the pur-
chaser in his place to receive the unpaid purchase money,
as it does in other cases of sale where bond for titles is
outstanding.   But we think where a deed given for
security is intended to fall under section 1969 of the
code, it ought to contain some reference to the statute,.
or indicate in some other way the purpose for which it
is executed.   Why should the false and fictitious state-
ment that the consideration of the deed is money in
hand paid, be introduced where no such consideration
exists.   A deed can be made absolute and convey title
under the statute quite as well by speaking the truth as
by speaking a falsehood.   *Roland vs. Coleman*, 76 *Ga.*
652.   Recovery can be had in ejectment upon a deed
given for security merely.   *Oellrich vs. Georgia R. R.*, 73
*Ga.* 389, and cases cited.   The holder of the bond for
titles might never pay the debt and redeem the land.
In that case, to whom would the land belong?   The
maker of the bond may collect his money as provided
in §1970, of the code, but he is not confined to that
remedy.   *Dykes vs. McVay*, 67 *Ga.* 502.   Doubtless

*obiter dicta* may be found in some of the cases, suggesting or implying that liens will not attach whilst land is held under §1869 as security, but there is no direct decision to that effect that we are aware of.

The second instrument above recited, considered as an agreement, is *nudum pactum*, no consideration being expressed or indicated for its execution. Nor do we think it fairly imports the payment by Baker to Johnson of any part of the debt referred to in the former instrument. What it does signify in this respect, or as tending to show a rescission touching two of the three deeds, is a question for the jury, in the light of all the circumstances. It seems to indicate a purpose to release from Johnson's claim of title the premises embraced in two of the deeds, but even as such release, it has, taken alone, no force for lack of a consideration. *Foster vs. Rutherford*, 20 *Ga.* 676; *Lowe vs. Bryant*, 32 *Ga.* 235. Besides, standing alone, it is wholly wanting in certainty with respect to which of the deeds dated April 10th it refers to. The only certainty is that it does not embrace both, and we can see no reason for applying it to the deed conveying the Irick land, rather than to the other deed of the same date.

4. But the plaintiff claimed a wider and more comprehensive lien for her judgment, upon the ground that Johnson's undertaking to reconvey, as embodied in the first instrument above recited, being an executory contract, was not obligatory; because, as the plaintiff sought to prove, it was the offspring of a fraudulent scheme, shared in by both Baker and Johnson, to hinder, delay and defraud Baker's creditors. The theory advanced was, that all three of the deeds from Baker to Johnson were executed for that purpose, in whole or in part; that Baker carried out his part of the scheme by conveying title to Johnson, and that

Johnson undertook to execute his part by a reconveying to Baker upon the payment of a real or pretended debt of $150. Though the position of counsel before us was not formulated in these terms, its legal import, as we understood it, was substantially as now stated. On this line of attack, the plaintiff tendered in evidence, at the trial in the court below, the two deeds additional to that embracing the Irick farm, so as to have all three deeds before the jury upon the question of fraud. She also offered to prove certain admissions of. Baker that the Irick farm, as well as the other property, was conveyed to Johnson simply and solely in order to give Baker time to beat off or compromise with his creditors, and that Johnson never paid him one cent. The court ruled out the two deeds and these admissions. We think this also was error. There is evidence in the record tending to show that at the time these conveyances were executed, Baker owed outstanding debts, indeed was heavily involved. If he conveyed the Irick farm to Johnson for the purpose specified in his imputed admissions, although an additional object might have been to secure a debt which he owed to Johnson, the consideration of the conveyance was infected with fraud; and being illegal in part, if not in whole, the conveyance was utterly void as against creditors, but being an executed contract, was good and valid as between the parties, and passed to Johnson a title upon which he could recover the premises from Baker in ejectment. Doe vs. Roberts, 2 Bar & Ald 367; Jackson vs. Garnsey, 16 Johns. 189; Broughton vs. Broughton, 4 Rich. (33 S. C.) 491; M·Cleskey vs. Leadbetter, 1 Ga. 551; Adams vs. Barrett, 5 Ga. 404. And the land would be subject to levy and sale for Johnson's debts. Hartley vs. McAnulty, 4 Yeates, 95.

On the other hand, Johnson's contract to reconvey,

not being executed but executory, would be one on which courts of law nor equity would afford any remedy, the parties thereto being *in pari delicto*. *Howell vs. Fountain*, 3 *Ga.* 176; *Peacock vs. Terry*, 9 *Ga.* 137; *Galt vs. Jackson*, *Ib.* 151; *Heineman vs. Newman*, 55 *Ga.* 262.

The distinction to which we have referred between executed and executory contracts (as to which see code, §2715) is widely, we may say almost universally, recognized. Bump Fraud. Conv., 3 ed. 444, 446, and authorities cited; Wait Fraud. Conv. §§395, 397, 398; Bishop Contr. §1203; Herm. Estop. §§577, 599. One case in our reports, (*Harrison vs. Hatcher*, 44 *Ga.* 638,) decided by two judges, overlooking this distinction, holds that courts will not aid the grantee in a fraudulent deed to get possession. In not one of the authorities which that case cites was any deed made by the defendant to the plaintiff in the action, and the ruling of the case is in conflict, as well with the decision in *McCleskey vs. Leadbetter* and the doctrine of *Adams vs. Barrett*, *supra*, as with the general current of authorities. If that ruling is not clearly wrong, it must be by reason of some peculiar facts in the terms of the deed or otherwise, not reported. The deed before us expresses a substantial money consideration as paid, whereas the deed involved in *Harrison vs. Hatcher* may have appeared on its face voluntary. A distinction turning on actual payment of some consideration by the fraudulent purchaser, though doubtless unsound unless properly restricted, is suggested by what was said in *Goodwyn vs. Goodwyn*, 20 *Ga.* 600, in which case there was no deed at all; and it is also mentioned in *Bush vs. Rogan*, 65 *Ga.* 320. Other cases (such as *Tufts vs. DuBignon*, 61 *Ga.* 322, and *Palmer vs. Melson*, 76 *Ga.* 803) in which the relation of landlord and tenant was

involved, stress the fact of possession having changed in pursuance of the alleged fraudulent deeds. We think, however, that both upon principle and authority, the fraudulent maker of such instruments is bound by them according to their terms, irrespective both of any actual payment of a consideration, or any contemporary or subsequent change of possession. A deed signed, sealed and delivered, and expressing a valuable consideration on its face, imports a legal consideration; and the maker is estopped from alleging or proving the contrary to defeat the deed as title, if to do so involves setting up his own turpitude, and convicting himself of a deliberate intent to defraud his creditors. While the recital in a deed of the payment of the purchase money is not conclusive, and while the consideration may always be inquired into when the principles of justice may require it, (code, §§2690, 2698,) yet the principles of justice neither require nor allow the inquiry at the instance of the fraudulent grantor. Were such indulgence accorded him, the rule of public policy sought to be subserved by visiting losses upon the contrivers and perpetrators of fraud, and thereby discouraging attempts at fraud, would in a great degree be nugatory. Nor is any change of possession requisite to completely and effectually pass the title to land by deed. The title passes as completely, so far as the parties to the conveyance are concerned, where the possession is retained as where it is delivered. Especially must this be so where the vendor accepts from his vendee a bond for titles or an obligation to reconvey. *Gibson vs. Hough*, 60 *Ga.* 588.

The holder of a bond for titles with the purchase money unpaid is, legally speaking, never in adverse possession as to the maker of the bond, but is a *quasi* tenant under him. *Stamper vs. Griffin*, 12 *Ga.* 457; *Beverley vs. Burke*, 14 *Ga.* 73. It is a mistake—a wide

mistake—to regard an action of ejectment or complaint for land as a call upon the court to enforce the fraudulent deed as a contract. The law, taking the parties at their word and acting upon the deed as pure, has already executed it as a contract and transmitted it into title. The court is called upon to do nothing in behalf of the plaintiff in a suit to recover the land, but that which it does for every plaintiff who comes armed with complete title to recover possession of his property. On the question of title or no title, the rules of law exclude inquiry into any fraud out of which the deed sprang. The court, when adjudicating upon the instrument as the title, is not at liberty to know or ascertain that it originated in the mutual fraud or collusion of the parties. Where the application before the court is to take the fruits of some executory element of the deed, such as covenant of warranty, then its origin in mutual fraud is open to investigation, and the maker of the deed can successfully defend, upon that ground, an action for a breach of the covenant. Either of the parties *in pari delicto* may avoid executory undertakings, in or out of the deed, provided they are connected with and constitute a part of the fraudulent scheme or conspiracy. It is for this reason that the evidence offered and rejected was admissible. It is not admissible to make the deed better for Johnson, his estate or his creditors, than it would be as the parties left it. The deed has no need of being made better; for as we have seen, whether the fraud be exposed or not, the conveyance is completely valid and operative as a muniment of title in favor of Johnson against Baker. The evidence is admissible alone for the purpose of manifesting the imputed vice in the executory contract of Johnson to reconvey to Baker, and to outlaw it. If that contract should be found tainted with the fraud imputed to it, we think

Johnson's creditors may take advantage of its infirmity so long as the contract remains executory, and that in their behalf, the property embraced in the deed, to the extent of its whole value, will be treated as assets belonging to Johnson's estate, and subject to the payment in full of judgments legally rendered against the representative of that estate.

5. The delivery of the deed, whether Johnson ever had manual possession of it or not, we consider established by its being one of the deeds embraced in the executory contract for a reconveyance, and by its being recorded. These two facts, taken together, leave no room for doubt. Indeed, the former, standing alone, would seem to be conclusive. *Raley vs. Ross,* 59 *Ga.* 862.

Judgment reversed.