19090. CHENOWETH *v.* WILLIAMS.

DECIDED FEBRUARY 21, 1929.

*Bennet & Bennet,* for plaintiff.  *Branch & Snow,* for defendant.

BELL, J.  In the present case the defendant orally moved to dismiss the petition, upon the ground that it failed to set forth a

cause of action; and the court withheld decision on the motion until the introduction of evidence by the plaintiff. After the plaintiff had announced his case closed, the defendant renewed the motion to dismiss, contending that from the facts set forth in the petition and from the evidence adduced, the plaintiff was not entitled to recover. The motion was then sustained, and the plaintiff excepted.

Although the petition is, of course, more brief and succinct than the evidence, we think that in the particular case they were in substantial accord, and thus that, while a technical motion for a nonsuit would not have been good, the motion as made was rightly sustained, since from the facts both as stated in the petition and as shown by the evidence, there was no liability in law. *Kelly* v. *Strouse, O'Connor* v. *Brucker,* supra.

Chenoweth sued Williams to recover $236.49, basing his claim upon the following facts: The plaintiff was the owner of certain real estate in the city of Quitman which he agreed to sell to the defendant for the price of $5000. Shortly after the agreement, the plaintiff caused a deed to be drawn and tendered to the defendant upon the terms stated. In the meantime the defendant had examined the public records and had found that there were outstanding executions against the plaintiff to the amount of about $1400 (some of which, however, were dormant), and, because of the executions, objected to the title. But the plaintiff had previously executed a deed conveying the property to a Mrs. Dukes to secure an indebtedness of $4000, which deed contained a power of sale authorizing Mrs. Dukes upon a failure of the plaintiff to pay the debt at maturity to advertise and sell the property and to make conveyance to the purchaser. This indebtedness had matured and the power was ripe for exercise. Whereupon, in view of the outstanding executions against the plaintiff, he and the defendant made a supplemental agreement, to wit: The plaintiff would cause Mrs. Dukes to advertise the property under the power of sale, and the defendant would "bid it in as cheap as he could" and would pay the amount of the indebtedness to Mrs. Dukes, together with the accrued taxes; and that he would then pay to the plaintiff the difference between the aggregate of these items and $5000, the price originally agreed upon. It being inconvenient for one or both of the parties to attend the sale, they appointed one Knight to represent them both,

and he did so, buying the property for the defendant at a sum which, with the taxes added, amounted to $4763.51. This deducted from the $5000 leaves the amount sued for.

Such of the executions as were not dormant constituted a lien upon the property, though subject to the security deed in favor of Mrs. Dukes, and it was the intention of the parties that in such sale under power the defendant would acquire the title unincumbered, that is, relieved of the executions. The expressed purpose in making the arrangement was to salvage as much as possible for the plaintiff out of the sale to the defendant, after satisfying the taxes and the indebtedness to Mrs. Dukes, although it was understood that the public would have the right to bid, and if the property brought more than the Dukes claim (and the taxes) "the difference would be subject to the executions."

After the sale under the Dukes paper and the execution of a deed to the defendant in pursuance thereof, for which he paid to Mrs. Dukes $4666.31, this being the full amount of her claim and the sum at which the property was bid in, and after further paying city, State, and county taxes in the amount of $97.23, thus obtaining clear title to the property for the aggregate sum of $4763.51, the defendant refused to pay the plaintiff the difference between that amount and the $5000, as agreed upon, in fact denying that he had made any such agreement.

The motion to dismiss the case was upon the ground that the agreement as shown both by the pleadings and the evidence was upon its face intended to hinder, delay or defraud creditors, contrary to the law as contained in the Civil Code, § 3222. By the undisputed facts it appears that the plaintiff was seeking to make a sale of property, which was subject to executions against him, upon such terms as would enable him to save for himself a portion of the proceeds, when the same should have gone to his creditors.

A proper construction of that portion of the agreement which recognized that the public would have the right to bid, and provided that if the property brought more than the taxes and the indebtedness to Mrs. Dukes the remainder of the proceeds would be subject to the executions, is that, while the excess of the defendant's bid above these items would go to creditors, the difference up to $5000 would still be paid to the plaintiff; so for the reason that it could not have been expected that the defendant would ever bid more

than $5000, he having agreed to buy at that price and not more.

If it could be said that the part of the agreement to which we have just referred contemplated that other bidders at the sale might run the property to a price in excess of $5000, and that in such event the difference between the sum of the Dukes claim and the taxes on the one hand and the proceeds on the other would be subject to the executions, the plaintiff is yet not absolved. As we have just stated, there could have been no expectation that the defendant himself would run the property to a higher figure than that at which he agreed to buy from the plaintiff, and the mere fact that the right of others to bid was recognized does not purge the transaction as between the plaintiff and the defendant, where they intended that if possible the defendant would bid in the property at such a sum as would net the plaintiff a difference between the indebtedness under the security deed plus the taxes, and the agreed purchase price; and this is true notwithstanding the parties may not have done, and may not have intended to do, anything to discourage other prospective bidders.

The rights of others (including the execution creditors) to appear and bid at the sale was not a matter within the control of the plaintiff and the defendant. Hence they could not have failed to recognize such right, and the fact that they spoke of it as a possibility or contingency does not strengthen the plaintiff's position. The plaintiff was seeking to enforce an executory agreement, the subject of which was his equity in the property over and above the indebtedness to Mrs. Dukes and the taxes. It is manifest that the purpose of this agreement was at least to delay creditors, and an agreement having such a purpose stands no better before the law than one which was intended actually to defraud them. The language of the Code is "delay or defraud."

It is well settled that the court will not lend its aid to the enforcement of such an undertaking. Whether the amount claimed to be due still is subject to garnishment in favor of creditors is no sufficient answer, because it is the intention of the parties, and not the consequences, which causes the court to withhold its remedies. Compare *Cronic* v. *Smith* and the other cases cited with it in the first headnote. The rule is different where the contract has been executed. *Parrott* v. *Baker, 82 Ga.* 364 (4) (supra).

Counsel for the plaintiff in error rely upon the case of *Mathews*

v. *Starr*, 68 *Ga.* 521. In that case the property was about to be sold under execution against Starr; Mathews agreed that if Starr would permit him to buy it at sheriff's sale, and would not have the price run up on him, he would buy and would pay to Starr the difference between the price paid at the sale and $1000, which Starr claimed to be a fair valuation. Relying upon this agreement, Starr made no effort to pay the fi. fa. or to stop the sale as he could otherwise have done. Mathews bought for $625. Starr sued for the balance to complete the $1000. The Supreme Court held that the contract was grounded upon a sufficient consideration, and was not illegal. It does not appear that there was any creditor other than the plaintiff in fi. fa., nor that the parties intended that the property should be bid in at less than the amount of the execution, and it was sold for more. While in the present case there was no intention that the property should be bid in at less than the indebtedness to Mrs. Dukes, it was still contemplated that it would be bought at less than the amount of that claim and the outstanding executions, and also at less than the agreed purchase-price. The *Mathews* case would be identical with the instant case if we could exclude from this case the fact that there were execution creditors. To make a concrete comparison: Mrs. Dukes would represent the plaintiff in fi. fa. in that case, the plaintiff here would represent Starr, and the defendant would represent Mathews. If these were all the persons who were interested in the transaction now under investigation the Mathews case would be in point. That in the present case others were interested, namely the execution creditors, is the fact that makes the difference. It is immaterial that no such creditor is complaining and that none may have been injured. The question of whether the contract was intended to accomplish an illegal object is the governing factor, and if such was its purpose, it is unimportant that the creditors are quiescent, or that none of them have been damaged: In such a case the law is simply passive, leaving the parties where it finds them.

We do not mean to say that the parties in this case consciously intended to do wrong. It is the general rule that fraud may arise as an inference of law, and that where an agreement is made under circumstances the result of which must necessarily be to hinder or delay creditors, it will be presumed in law that such was the inten-

tion of the transferor making it. "It is generally, if not universally, held that freedom from moral turpitude, and an innocent and honest intention to accomplish a good object in the disposition of the property, are not enough to relieve a transaction of this kind from its fraudulent character, in reference to its effect upon the legal rights of creditors, for everyone is presumed to intend the natural and probable consequences of his own acts." 12 R. C. L. 537, 538.

The record shows that the agreement sued on was not made by the plaintiff in person, but by another acting for him; but since the agreement as thus made is the foundation of the action, the plaintiff is bound by such infirmities as it may possess. .

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*