76305. SEYMOUR v. BRUCE.
(370 SE2d 211)

McMURRAY, Presiding Judge.

Plaintiff Bruce's complaint alleged that defendant Seymour, f/k/a Barker, "is indebted to him in the sum of $55,000 as the balance due upon a contract and settlement agreement made and entered into between the parties." Defendant's answer denied that plaintiff is entitled to any relief against defendant and raised several defenses including an allegation that any contract or settlement agreement between the parties was predicated upon an illegal or immoral consideration.

The evidence at trial shows that defendant and her now deceased husband, operated a farm. When plaintiff was a youth he moved in with them, being treated as a son would be treated. Plaintiff moved away after his marriage in 1966. In 1980 or 1981 following the death of defendant's husband, plaintiff and his family moved back to a house on defendant's farm. Plaintiff testified that this move was prompted by defendant's promise to deed the house to plaintiff and his wife if they would move there. Shortly after he moved defendant delivered a deed for the house and surrounding tract of land. Plaintiff and his wife added an 1,800 square foot addition to the house which he estimated was worth $46,000.

Subsequently, plaintiff and his wife were arrested and indicted for violations of the Georgia Controlled Substances Act. The criminal charges were eventually dismissed, but while they were pending plain-

tiff and his wife conveyed their house and surrounding tract back to defendant. The evidence as to the motive for this conveyance is not entirely consistent, there being evidence that plaintiff deeded the property over to defendant to defraud his attorney, to avoid forfeiture in the criminal proceeding or simply to accede to defendant's insistence that a transfer was necessary to avoid loss of the property. Plaintiff received no consideration for the conveyance and defendant promised plaintiff that she would deed it back to him as soon as the criminal charges were disposed. After deeding the property back to defendant plaintiff and his wife continued to live in the house.

The ownership of the property went unmentioned until 1984, when plaintiff who was commencing some remodeling of the house asked defendant if she would put the property back in his name. Defendant told plaintiff, "we'll see about it son." Plaintiff testified that prior to the remodeling defendant told him to "go ahead and do what you want to just like it's yours, said because the deeds will be back in your name." Although the chronology is unclear, plaintiff testified as to numerous conversations with defendant regarding where he and his family would live in the event of a proposed sale by defendant including the house and tract which had been conveyed to plaintiff and back to defendant. Plaintiff testified as to a conversation in which defendant, after inquiring as to what it would cost for plaintiff to acquire another home, promised to pay plaintiff $75,000 after the land sold. Plaintiff was given $20,000 following the sale of the land but no more.

The jury returned a verdict in favor of plaintiff for $30,000. Defendant appeals, raising by her sole enumeration of error the trial court's refusal to grant her motion for directed verdict on the grounds of her defense, that, if a contract or settlement agreement existed between the parties the underlying consideration was illegal or immoral. *Held*:

Defendant argues that while there was a conflict in the evidence as to why title to the real property was transferred back to defendant, under any version testified to, the transfer was effected to defraud a creditor or one who might become a creditor, thus was for an illegal and immoral purpose. Defendant argues the "unclean hands" doctrine is governing. "It is as well settled as any proposition can be, that neither a court of law nor a court of equity will lend its aid to either party to a contract founded upon an illegal or immoral consideration. If the contract is executed, it will be left to stand; if it is executory, neither party can enforce it." *Watkins v. Nugen*, 118 Ga. 372, 373 (2, 3) (45 SE 262). Thus, argues defendant, the conveyance by plaintiff to defendant was binding and no relief should be afforded to plaintiff, who is trying to do indirectly what he could not do directly by an action in equity to set aside the deed. *Williams v. Williams*, 255 Ga.

264 (336 SE2d 244); *Parrott v. Baker*, 82 Ga. 364, 365 (4) (95 SE 1068); *Cronic v. Smith*, 96 Ga. 794 (22 SE 915).

However, the "unclean hands" doctrine does not bar a litigant from seeking relief unless the misconduct relates directly to the transaction concerning which relief is sought. *Sparks v. Sparks*, 256 Ga. 788, 789 (2) (353 SE2d 508). In the case sub judice, plaintiff's action is predicated not upon the conveyance to defendant but upon defendant's promise to pay him $75,000 when the land sold. Under *Sparks* the "unclean hands" doctrine is inapplicable. The jury accepted plaintiff's view that defendant's promise was made in extinguishment of a doubtful claim. Therefore, defendant's contention that there was no consideration for the promise is without merit. *Skinner v. Smith*, 120 Ga. App. 35 (169 SE2d 365); *David v. Atlantic Co.*, 69 Ga. App. 643 (26 SE2d 650); *Mons v. Morgan's, Inc.*, 83 Ga. App. 814 (65 SE2d 34); *Langford v. Milwaukee Ins. Co.*, 101 Ga. App. 92, 95 (113 SE2d 165); *Jones v. C & S Nat. Bank*, 231 Ga. 765, 768 (II) (204 SE2d 116). The trial court did not err in denying defendant's motion for directed verdict.

*Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED JUNE 1, 1988.

*Robert B. Thompson*, for appellant.
*Jack M. Carey, Christopher J. Walker III*, for appellee.